# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| MAY-REE N.,[1] | : | Case No. 3:21-cv-00297 |
| Plaintiff, | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

## DECISION AND ORDER

Plaintiff filed an application for Disability Insurance Benefits in April 2020. Plaintiff's claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, this Court AFFIRMS the Commissioner's decision.

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

**I.     BACKGROUND**

Plaintiff asserts that she has been under a disability since January 29, 2019. At that time, she was forty years old. Accordingly, Plaintiff was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 404.1563(c). Plaintiff has a "high school education and above." *See* 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," ECF No. 8) is summarized in the ALJ's decision (*id.*, PageID 36-46), Plaintiff's Statement of Errors ("SE," ECF No. 10), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," ECF No. 11), and Plaintiff's Reply Memorandum ("Reply," ECF No. 12). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

**II.    STANDARD OF REVIEW**

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social

Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651

(6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

### III. FACTS

#### A. The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

| | | |
|---|---|---|
| Step 1: | | Plaintiff has not engaged in substantial gainful activity since January 29, 2019, the alleged onset date. |
| Step 2: | | She has the severe impairments of fibromyalgia; migraine with aura, not intractable; sprain of ligaments, thoracic spine and knee; degenerative disc disease, cervical spine; residual effects status-post right foot fracture; morbid obesity; episodic mood disorders; undifferentiated somatoform disorder; primary insomnia; and anxiety with a history of post-traumatic stress disorder ("PTSD"). |
| Step 3: | | She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | | Her residual functional capacity (RFC), or the most she can do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of light work as defined in 20 C.F.R. § 404.1567(b), subject to the following limitations: "never climb ladders, ropes, or scaffolds; frequently climb ramps and stairs; |

        occasionally balance, stoop, crouch, kneel, and crawl; avoid hazardous machinery and unprotected heights; work is limited to simple, routine, and repetitive tasks; performed in a work environment free of fast-paced production requirements; involving only simple, work-related decisions; with few, if any, workplace changes; only occasional interaction with the public; and only occasional interaction with coworkers, but no tandem tasks."

        She is unable to perform any of her past relevant work.

Step 5:    Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform.

(AR, ECF No. 8-2, PageID 38-45.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.*, PageID 45-46.)

    **B.**    **The ALJ's Symptom Severity Analysis**

The ALJ explained the applicable legal standard for evaluating Plaintiff's symptoms when determining the RFC, as follows:

> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p. The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c.
>
> In considering [Plaintiff's] symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce [Plaintiff's] pain or other symptoms.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce [Plaintiff's] pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and

5

> limiting effects of [Plaintiff's] symptoms to determine the extent to which they limit [Plaintiff's] work-related activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if [Plaintiff's] symptoms limit the ability to do work-related activities.

(AR, ECF No. 8-2, PageID 41.)

The ALJ then summarized Plaintiff's symptoms and other subjective complaints that she alleged in the pre-hearing case brief and at the hearing:

> [Plaintiff] alleged difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, and using her hands (5E/6). [Plaintiff] also alleged difficulty with memory, completing tasks, concentrating, understanding, and following instructions (5E/6). [Plaintiff] alleged that she is in "constant pain" and that she can only pay attention for one minute or two (5E/6). [Plaintiff] alleged that she can follow a recipe and understand spoken instructions (5E/6). However [Plaintiff] alleged that she does not handle stress and changes in routine well (5E/7). [Plaintiff] testified to similar limitations, and added that she has difficulty sleeping and with fatigue (Testimony). [Plaintiff] testified that she has difficulty leaving her house due to social anxiety (Testimony). [Plaintiff] testified that she has migraine-type headaches once per week and that her medications have not helped (Testimony).

(AR, ECF No. 8-2, PageID 41.) The ALJ concluded:

> After careful consideration of the evidence, the undersigned finds that [Plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(*Id.*)

IV.     LAW AND ANALYSIS

Plaintiff contends that the ALJ failed to properly evaluate her symptom severity as it relates to her severe fibromyalgia impairment. (SE, ECF No. 10, PageID 1398.) Plaintiff also asserts that her "strong work history should weigh in favor of giving her symptom severity complaints weight." (*Id.*, PageID 1400.) For the reasons discussed below, these contentions are not well-taken.

   A.     **The ALJ Did Not Reversibly Err in Evaluating Plaintiff's Symptom Severity**

As the ALJ correctly noted, a Social Security regulation governs the evaluation of Plaintiff's symptoms. 20 C.F.R. § 404.1529. Further, when a claimant alleges symptoms of disabling severity, the Social Security Administration requires ALJs to use a two-step process for evaluating an individual's symptoms. SSR 16-3p, 2017 WL 5180304, *3 (revised and republished Oct. 25, 2017).[2]

At the first step, the ALJ must "determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-3p at *3. The ALJ must make this determination based upon objective medical evidence in the form of medical signs or laboratory findings. *Id.* Medical signs are "anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques that can be observed apart from an

---

[2] Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1).

7

individual's symptoms." *Id*. The ALJ will not, however, consider whether the objective medical evidence supports the alleged severity of the individual's symptoms. *Id*.

At the second step, the ALJ must "evaluate the intensity and persistence of an individual's symptoms . . . and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." SSR 16-3p at *9. The Social Security Administration "recognize[s] that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence." *Id*. The ALJ must therefore examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*.

When evaluating the intensity, persistence and limiting effects of the claimant's alleged symptoms, the ALJ must consider the following factors:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

8

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p at *7-8; *cf.* 20 C.F.R. § 404.1529(c)(3). The ALJ need only discuss those factors that are pertinent based upon the evidence in the record. *Id*. The ALJ's discussion of the applicable factors "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10.

Here, the ALJ complied with the two-step process required by 20 C.F.R. § 404.1529 and SSR 16-3p. Specifically, the ALJ determined that Plaintiff has medically determinable impairments (fibromyalgia; migraine with aura, not intractable; sprain of the ligaments, thoracic spine, and knee; cervical spine degenerative disc disease; residual effects status-post right foot fracture; morbid obesity; episodic mood disorders; undifferentiated somatoform disorder; primary insomnia; and anxiety with a history of PTSD) that could reasonably cause some of the alleged symptoms. (AR, ECF No. 8-2, PageID 38, 41.) The ALJ then considered the evidence in the record and found that Plaintiff's statements about the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence of record. (*Id.*, PageID 41.) Because the ALJ's findings are supported by substantial evidence, the Court must affirm the ALJ's decision.

9

      1.      <u>Fibromyalgia</u>

Plaintiff challenges the ALJ's findings at the second step of the analysis, arguing that the ALJ "failed to build a logical bridge in evaluating [Plaintiff's] fibromyalgia and symptom severity . . . . " (SE, ECF No. 10, PageID 1400.) Plaintiff points to a February 2018 examination where she reported many complaints—including widespread pain—and said that she could work for only one hour each day. (SE, ECF No. 10, PageID 1398.) Plaintiff notes that the examination showed eighteen positive tender points. (*Id.*, PageID 1398-99.) Plaintiff additionally cites to her statement during a June 2018 physical therapy session that she experienced extreme tiredness by 9:00 a.m. (*Id.*, PageID 1398.)

Significantly, however, all of this evidence predates Plaintiff's alleged onset date. *See Shepard v. Comm'r of Soc. Sec.*, 705 Fed. Appx. 435, 441 (6th Cir. 2017) ("In disability cases, 'the relevant time period runs from [the claimant's] alleged onset date to h[er] date last insured . . . .'") The ALJ instead relied on evidence from the relevant time period that began on January 29, 2019. (AR, ECF No. 8-2, PageID 41-42.) The ALJ provided a detailed summary of Plaintiff's subjective complaints in the disability reports and at the hearing. (AR, ECF No. 8-2, PageID 41.) He noted that Plaintiff complained of several physical and mental limitations. (*Id.*) He acknowledged that Plaintiff complained of "constant pain" and reported other pain-related symptoms such as fatigue and difficulty sleeping. (*Id.*) He also acknowledged that Plaintiff sought treatment for many of these complaints on several occasions. (*Id.*, PageID 42.) The ALJ cited Plaintiff's history of migraine headaches and noted that she sought treatment from a neurologist and took medication. (*Id.*) The ALJ also recognized Plaintiff's history of musculoskeletal

issues, as evidenced by a cervical spine MRI that documented degenerative disc disease, as well as Plaintiff's history of a right foot fracture, fibromyalgia, and morbid obesity. (*Id.*) He referred to records that documented tenderness to palpation, decreased range of motion of the cervical spine, and some decreased grip strength. (*Id.*)

The ALJ compared this evidence to other records that showed normal cervical spine range of motion, normal range of motion in the extremities, full strength in all extremities, and a normal gait. (AR, ECF No. 8-2, PageID 42.) The ALJ found that Plaintiff's headaches had improved, based on treatment notes dated since the alleged onset date that document no significant or consistent headache complaints. (*Id.*) The ALJ concluded that the balance of the evidence did not support Plaintiff's allegations of symptom severity. (*Id.*) The ALJ accounted for the preponderance of the evidence by limiting Plaintiff to the reduced range of light work set forth in the RFC. (*Id.*, PageID 41-42.) The Court finds that the ALJ's conclusions are supported by substantial evidence and therefore must be affirmed by this Court.

Plaintiff cites to several cases in support of her argument that the ALJ failed to build a logical bridge between the evidence and his conclusions. (SE, ECF No. 10, PageID 1398 (citing *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 879 (N.D. Ohio 2011); *Bledsoe v. Comm'r of Soc. Sec.*, No. 1:09-CV-564, 2011 WL 549861, at *5 (S.D. Ohio Feb. 8, 2011) (Barrett, D.J.); *Bailey v. Comm'r of Soc. Sec.*, 1999 WL 96920 at *4 (6th Cir. 1999); and *Hurst v. Sec'y of Health and Hum. Servs.*, 753 F.2d 517 (6th Cir. 1985)).) All of these cases are distinguishable.

The *Fleischer* court found that the ALJ provided a "logical bridge" to support his determination because the ALJ "sufficiently explained his reasons for finding that [the plaintiff] could perform light duty work." 774 F. Supp. 2d at 879. However, the court remanded because the ALJ's failure to address medical opinion evidence "deprive[d the court] of the ability to conduct any meaningful review." *Id.* at 879, 881 (citation omitted). The *Bledsoe* court also remanded because the ALJ's failure to address a medical source opinion prevented a meaningful review. No. 1:09-CV-564, 2011 WL 549861, at *5. In this case, by contrast, the ALJ addressed all the medical opinion evidence in the record, and Plaintiff has not assigned this issue as an error. (*See* SE, ECF No. 10; AR, ECF No. 8-2, PageID 36-46.) Thus, these cases are not on point.

In *Bailey*, the court found that substantial evidence existed to support the ALJ's RFC for light work but remanded because the ALJ did not articulate specific reasons for the Step Four finding. 1999 WL 96920 at *4. Here, by contrast, no error has been alleged that the ALJ's Step Four finding is deficient.

Finally, the *Hurst* court opined that the ALJ's failure to address and consider all of the findings from the plaintiff's treating physician, as well as plaintiff's testimony that was consistent with the physician's findings, prevented meaningful review. 753 F.2d at 519. In this case, however, Plaintiff does not allege that the ALJ failed to credit the opinion of a treating physician. Indeed, no treating physician has opined that Plaintiff is disabled. Further, the ALJ provided reasonable explanations, supported by substantial evidence, for finding that Plaintiff's symptoms—including symptoms associated with fibromyalgia—are not entirely consistent with the medical and other evidence of record.

Plaintiff also challenges the ALJ's treatment of consultative physician Dr. Onamusi, who opined that Plaintiff could lift up to 20 pounds, and frequently sit, stand, and walk, with additional limitations. (AR, ECF No. 8-2, PageID 44.) Plaintiff contends that the ALJ improperly discounted Dr. Onamusi's opinion "because it is allegedly not supported by objective findings." (SE, ECF No. 10, PageID 1399-1400.) This assertion mischaracterizes the ALJ's analysis. In fact, the ALJ found that Dr. Onamusi's opinion was "somewhat persuasive," and that his findings were "somewhat consistent with the overall objective evidence." (AR, ECF No. 8-2, PageID 44.) But the ALJ concluded that "Dr. Onamusi's findings . . . are somewhat vague with his finding of 'frequent' sitting, standing, and walking." (*Id.*) The ALJ also concluded that Dr. Onamusi's "finding that [Plaintiff] could only frequently use her upper extremities [is] not supported by objective findings or explanation." (*Id.*) This Court concludes that the ALJ's analysis addressed the supportability and consistency factors in compliance with the applicable regulations (20 C.F.R. § 404.1520c(c)(1), (c)(2)), and his findings are supported by substantial evidence.

Plaintiff cites several cases to support her argument that the ALJ misunderstands the nature of fibromyalgia. (SE, ECF No. 10, PageID 1400 (citing *Kalmbach v. Comm'r of Soc. Sec.,* 409 F. App'x 852, 861 (6th Cir. 2011); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007); *Preston v. Sec'y of Health & Hum. Servs.,* 854 F.2d 815, 820 (6th Cir. 1988)).) These cases, too, are distinguishable. The ALJs in *Kalmbach* and *Rogers* erred by finding insufficient objective evidence to conclude that fibromyalgia was severe at Step Two. *Kalmbach*, 409 F. App'x at 859; *Rogers*, 486 F.3d at 243. But in this case the ALJ found that fibromyalgia is a severe impairment, and the ALJ's Step Two

13

finding is not at issue. (*See* SE, ECF No. 10; AR, ECF No. 8-2, PageID 36-46.) In *Preston*, the court held that a treating physician's opinion that the plaintiff's fibromyalgia was disabling was "consistent, uncontradicted, and . . . supported by medical evidence . . . ." 854 F.2d at 818-20. Here, by contrast, the record contains no medical opinion that Plaintiff's fibromyalgia is disabling.

Moreover, all of these cases predate the publication of SSR 12-2p, which governs an ALJ's consideration of fibromyalgia in the Sequential Evaluation. SSR 12-2p, 2012 WL 3104869 (July 25, 2012). The SSR instructs that, consistent with SSR 96-8p, the ALJ must base the RFC on "all relevant evidence in the case record." *Id.* at *6. The Social Security Administration directs that "for a person with [fibromyalgia], we will consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'" *Id.* The SSR explains:

> Widespread pain and other symptoms associated with [fibromyalgia], such as fatigue, may result in exertional limitations that prevent a person from doing the full range of unskilled work in one or more of the exertional categories in appendix 2 of subpart P of part 404 (appendix 2). People with [fibromyalgia] may also have nonexertional physical or mental limitations because of their pain or other symptoms. Some may have environmental restrictions, which are also nonexertional.

*Id.* (footnotes omitted).

Here, the ALJ complied with the requirements of SSR 12-2p. The ALJ found that Plaintiff's fibromyalgia is a severe impairment at Step Two. (AR, ECF No. 8-2, PageID 38.) The ALJ then considered Plaintiff's subjective symptoms as well as "the objective medical evidence and other evidence" to assess Plaintiff's RFC. (*Id.*, PageID 41.) As discussed above, the ALJ acknowledged Plaintiff's subjective complaints, including her

complaints of "constant pain" and other pain-related symptoms such as fatigue and difficulty sleeping. (*Id.*) In his review of the medical evidence, the ALJ cited Plaintiff's history of fibromyalgia and summarized the objective evidence and Plaintiff's complaints that are documented in the medical records. (*Id.*, PageID 42-43.) The ALJ stated that he considered "the entire record" and concluded that Plaintiff's subjective complaints "are not entirely consistent with the medical evidence and other evidence in the record . . . ." (*Id.*, PageID 41.) The ALJ accounted for the preponderance of the evidence by limiting Plaintiff to the reduced range of light work set forth in the RFC. (*Id.*, PageID 41-42.)

Therefore, contrary to Plaintiff's assertion, the ALJ appropriately considered Plaintiff's subjective complaints related to fibromyalgia as required by SSR 12-2p. The ALJ was also required to consider objective evidence as part of the longitudinal record when evaluating Plaintiff's subjective complaints, and he did not err by doing so. SSR 12-2p, 2012 WL 3104869 (July 25, 2012); SSR 16-3p, WL 5180304 (revised and republished Oct. 25, 2017). Therefore, the ALJ's analysis complied with SSRs 12-2p and 16-3p, and the ALJ's conclusions are supported by substantial evidence.

    2.    <u>Work History</u>

Plaintiff further asserts that her "strong work history should weigh in favor of giving her symptom severity complaints weight." (SE, ECF No. 10, PageID 1400.) This argument challenges the ALJ's assessment of Plaintiff's credibility. But it is well established that this Court must give great weight and deference to an ALJ's credibility

assessment.³ *Workman v. Comm'r of Soc. Sec.*, 105 Fed. App'x 794, 801 (6th Cir. 2004). An ALJ's credibility findings "are virtually unchallengeable" absent compelling reasons. *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013). No such reason exists here.

Plaintiff argues that the ALJ should have considered her work history as part of his credibility assessment. (SE, ECF No. 10, PageID 1400.) But the Sixth Circuit has considered the argument raised by Plaintiff and has held that ALJs are "**not** required to explicitly discuss [a claimant's] work history when assessing his credibility." *Dutkiewicz v. Comm'r of Soc. Sec.*, 663 F. App'x 430, 433 (6th Cir. 2016) (emphasis added). Thus, Plaintiff has not identified any compelling reason to disturb the ALJ's credibility assessment.

For all these reasons, the ALJ's evaluation of Plaintiff's symptom severity and fibromyalgia is consistent with applicable legal requirements, and his conclusions are supported by substantial evidence.

## V.     CONCLUSION

The ALJ's evaluation of Plaintiff's symptom severity and fibromyalgia is consistent with applicable legal requirements, and his conclusions are supported by substantial evidence. Plaintiff did not identify any compelling reason to disturb the ALJ's credibility assessment. The Commissioner's decision must therefore be affirmed.

---

³ The current term used for evaluating subjective complaints is "consistency" instead of "credibility." *See Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (SSR 16-3p, 2017 WL 5180304 (Mar. 16, 2016, revised and republished Oct. 25, 2017) removed the term "credibility" only to "clarify that subjective symptom evaluation is not an examination of an individual's character.").

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (ECF No. 10) is OVERRULED;

2. The Court AFFIRMS the Commissioner's non-disability determination; and

3. The case is terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge
